
FILED
IN OPEN COURT

MAY - 4 2020

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-CR-100 |
| | ) | |
| FELICIA LYN DONALD, | ) | Hon. Leonie M. Brinkema |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, DR. FELICIA LYN DONALD ("DONALD"), stipulate that the allegations in the Criminal Information and the following facts are true and correct. The United States and DONALD further stipulate that had the matter gone to trial, the United States would have proven the allegations in the Criminal Information and the following facts beyond a reasonable doubt with admissible and credible evidence.

1. From at least in or around April 2016 and continuing to in or around April 2020, DONALD, with the assistance of at least five other individuals,[1] illegally distributed and dispensed, and caused to be illegally distributed and dispensed, at least 325,190 mg of Schedule II controlled opioids, including 297,860 mg of oxycodone, in addition to hydrocodone, morphine sulfate and methadone. As the leader and organizer of the conspiracy, DONALD distributed over 1,200,000 milligrams (mg) of Schedule II opioids at or above the Centers for Disease

---

[1] Two of these individuals include Kimberly Lancaster and Susan Alcantara. Lancaster, who previously served as DONALD's medical office manager, pleaded guilty before this Court on March 30, 2020 to conspiracy to distribute and dispense controlled substances outside the usual course of professional practice and without a legitimate medical purpose, and prescription fraud. Alcantara, who previously served as DONALD's medical assistant, pleaded guilty before this Court on March 30, 2020 to prescription fraud and false statements related to a health care matter.

1

Control and Prevention (CDC) guideline for dosages that a practitioner "should avoid," with a total street value of over $1.2 million. DONALD also committed health care fraud on numerous occasions in furtherance of her reckless and dangerous scheme.

2. At all times relevant during the existence of the conspiracy, DONALD held a Commonwealth of Virginia medical license and Drug Enforcement Administration registration number. DONALD practiced medicine at For Women OB/GYN Associates and NOVA Addiction Center, both of which she owned and operated in the same location in the Eastern District of Virginia (collectively, "The Medical Practices"). DONALD organized, led, and operated a prescription "pill mill" in the Eastern District of Virginia, at which so-called "patients," many of whom were actually cash-paying customers, could obtain medically unnecessary prescriptions, including Schedule II controlled substances, outside the usual course of professional practice and without a legitimate medical purpose.

3. As a medical doctor for the past 33 years, DONALD understood the applicable regulations, standards of care, and "red flags" for pain management practice that could indicate a patient was abusing or selling controlled substances. Nonetheless, DONALD continued to prescribe and distribute controlled substances to at least eight individuals that exhibited such red flags. These so-called "patients" included: addicts and/or drug dealers who had traveled from out-of-state or long distances to The Medical Practices; individuals that informed DONALD of their pending drug charges; individuals who DONALD knew had failed urine toxicology screens; and individuals who DONALD knew were selling the pills that she prescribed to them.

4. To prevent any delay in receiving payment by filing insurance claims and to avoid scrutiny of her prescribing practices, DONALD typically charged $200 cash per "visit" for "pain patients" to obtain prescriptions or refills of Schedule II controlled substances.

5. DONALD carried out the conspiracy by intentionally employing individuals who were addicted to pain pills, including oxycodone, and "paying" those employees, in part, with oxycodone prescriptions and other Schedule II opioids, rather than through pay checks.

6. DONALD personally and illegally distributed controlled substances, in part by:

   a. Repeatedly fueling patients' addictions by continuing to prescribe highly addictive opioids, while ignoring obvious warning signs that these individuals were abusing or illegally distributing the medications;

   b. Prescribing controlled substances without conducting physical examinations of patients;

   c. Failing to conduct diagnostic testing, failing to turn drug-seeking patients away, and failing to refer patients to specialists or for addiction treatment;

   d. Issuing prescriptions for controlled substances in dosages and/or in combinations dangerous to the health and safety of the patient, including the combination of opioids and alprazolam and;

   e. Issuing prescriptions for Schedule II opioids, including oxycodone, to multiple women who were pregnant.

7. As part of and in furtherance of the conspiracy, DONALD illegally gave blank prescriptions (scripts) to certain members of her medical office staff and other co-conspirators for their personal use.

8. From at least in or around April 2016 and continuing to at least in or around December 2019, DONALD fraudulently issued at least 19 prescriptions for hydrocodone-acetaminophen (commonly known as Vicodin®), totaling at least 1,174 pills, that were distributed to a close associate of DONALD who resides out-of-state. These prescriptions were issued in the names of DONALD's family members, co-conspirators, and unwitting individuals. In many instances, DONALD directed patients and her former medical office manager to fill the prescriptions at pharmacies located in the Eastern District of Virginia. The individuals then returned the opioids to DONALD, who shipped them to the close associate. DONALD knew

that the close associate sold the hydrocodone-acetaminophen prescriptions on the street for profit.

9. Beginning at least in or around January 2018 and continuing through at least in or around June 2019, DONALD also issued to the close associate six prescriptions for a total of 540 (270 mg total) alprazolam pills (commonly known as Xanax®, which belongs to a class of drugs known as benzodiazepines). On or about the same time, DONALD had issued hydrocodone-acetaminophen prescriptions to the close associate. DONALD knew that these prescriptions were issued outside the usual course of professional practice and without a legitimate medical purpose. The use of opioids with benzodiazepines is a dangerous combination of drugs that can make a person stop breathing, and could have killed or caused serious bodily injury to the close associate or to the ultimate users.

10. In furtherance of her opioid distribution conspiracy and health care fraud scheme, DONALD attempted to conceal her patterns of illegal prescribing by falsifying medical records to make it appear as though patients and individuals who were never patients of The Medical Practices received medical examinations and medical care, when in fact they had not. DONALD also directed her medical office employees to falsify medical records for the same purpose.

11. Furthermore, DONALD provided materially false and/or misleading statements to federal agents and state regulators. One of the ways in which DONALD concealed from law enforcement, regulatory authorities, and those involved in the pharmaceutical supply chain the volume of opioids she distributed was by fraudulently issuing prescriptions to customers in the names of at least nine unwitting individuals, without lawful authority. Consequently, in this manner, from January 2017 through June 2019, DONALD fraudulently distributed at least 22,737 Schedule II opioids, or 241,670 mg (including 237,470 mg of oxycodone).

12. On several occasions, including in April 2019, DONALD illegally transported marijuana, a Schedule I controlled substance, from California to Northern Virginia. DONALD subsequently distributed the marijuana to at least six members of her office staff at the Medical Practices, including individuals DONALD knew were addicted to opioids.

13. From at least in or around November 2016 and continuing to at least in or around August 2019, DONALD knowingly submitted and caused to be submitted fraudulent billing claims to the Virginia Medicaid Program on several occasions. In furtherance of her health care fraud scheme, DONALD submitted or caused to be submitted claims to Medicaid for patient examinations DONALD did not perform related to eight patients because DONALD was out of the country on these dates of service.

14. In addition, DONALD fraudulently received thousands of dollars in Medicaid payments for patient visits with dates of service between January 2017 and August 2019 where no supporting documentation exists related to at least eight patients.

15. From at least in or around December 2018 and continuing to at least in or around April 2019, DONALD submitted fraudulent Medicaid claims for pain related office visits for patient B.N. DONALD knew that the sole purpose for any services provided to B.N. during this time was for B.N. to obtain prescription opioids that B.N. could distribute on the street for profit. To this end, during this time, DONALD provided B.N. with fraudulent prescriptions for opioids in the names of at least one of B.N.'s relatives.

16. For example, on April 20, 2019, DONALD submitted a claim to the Virginia Medicaid Program for an established patient visit when the sole purpose of B.N.'s visit to DONALD's office was for B.N. to obtain prescription opioids that B.N. could illegally distribute on the street for profit.

17. This Statement of Facts includes those facts necessary to support the plea agreement between DONALD and the United States. It does not include each and every fact known to DONALD or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding DONALD's case.

18. The acts taken by DONALD in furtherance of the offenses charged in this case, including the acts described above, were done willfully, knowingly and with specific intent to violate the law, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By: _____
Raj Parekh
Monika Moore
Assistant United States Attorneys

Defendant's Signature: After consulting with my attorneys and pursuant to the plea agreement entered into this day between the United States and me, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 5/4/20

_____
FELICIA LYN DONALD
Defendant

Defense Counsel Signatures: We, Sean A. Sherlock and David J. Dischley, are counsel for the defendant (FELICIA LYN DONALD), in this case. We have carefully reviewed the above Statement of Facts with her. To our knowledge, her decision to stipulate to these facts is an informed and voluntary one.

Date: 5/4/20

_____
Sean A. Sherlock, Esq.
David J. Dischley, Esq.
Counsel for the Defendant

7