IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:20-cr-100 |
| FELICIA LYN DONALD, | Hon. Leonie M. Brinkema |
| *Defendant.* | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO CONTINUE AND NOTICE OF EXHIBITS FOR THE AUGUST 7, 2020 BOND REVOCATION HEARING**

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and Raj Parekh, Assistant United States Attorney, hereby provides its preliminary response to the defendant's Motion to Reschedule Sentencing. The United States also provides notice to the Court and counsel for Felicia Lyn Donald ("the defendant") that, in addition to oral argument, it intends to rely upon eight exhibits at the August 7, 2020 bond revocation hearing, all of which are attached to this filing.

1. On May 4, 2020, following a thorough Rule 11 plea colloquy, the defendant waived indictment and pleaded guilty to the following two counts set forth in a filed Criminal Information: Count One charged the defendant with conspiracy to distribute and dispense, and to cause to be distributed and dispensed, Schedule II controlled substances, including oxycodone, hydrocodone, methadone, and morphine sulfate, outside the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and Count Two charged the defendant with health care fraud, in violation of 18 U.S.C. § 1347.

2. The sentencing hearing in this matter is currently scheduled to occur on August 21, 2020. However, on July 23, 2020, newly retained counsel for the defendant filed a motion to

continue the sentencing date "and reset the matter to an agreeable later date . . . ." Dkt. No. 33 at 1. The motion states, *inter alia*, that "the defense is not asking for a year" but does not provide the Court or the government with any other guidance as to how much of a delay the defense is seeking. *Id.* at 2. Based on conversations that the government has had with defense counsel since the filing of that motion, it is the government's understanding that the defense will further articulate its position at the August 7, 2020 bond revocation hearing in this matter. While the government does not oppose a continuance, the government respectfully reserves its final position on the specific length of that continuance until it has an opportunity to listen to defense counsel's proposal at the August 7 hearing.

3. Separately, for the Court's convenience and ease of reference, the government has attached to this filing eight exhibits that are relevant to the Probation Office's July 16, 2020 Notice of Apparent Violations Memorandum and accompanying Petition for Action. Counsel for the defendant informed the government that the defense is not challenging the authenticity or admissibility of the attached documents in connection with the bond revocation hearing. The government intends to refer to these materials during its portion of oral argument on August 7.

4. **Exhibit 1** contains portions of the certified transcript of the May 4, 2020 pre-indictment plea hearing held in this case. The government has highlighted certain exchanges between the parties and the Court, as set forth on pages 44-47 (of the original page numbers).

5. **Exhibit 2** contains this Court's Order Setting Conditions of Release, which the defendant signed on May 4, 2020 following the plea hearing.

6. **Exhibit 3** is a May 11, 2020 email chain between the defendant and Co-Conspirator 2 ("CC-2"), who is identified in Probation's Petition, with the subject line "statement of facts." In a April 17, 2020 meeting held at the U.S. Attorney's Office and attended

by the defendant, two attorneys who previously represented the defendant, undersigned counsel, three federal law enforcement agents, and another Assistant U.S. Attorney (who joined by telephone), the government repeatedly identified CC-2 by name as a co-conspirator in this case. The May 11 email from the defendant to CC-2 states: "This is what needs to be disproved in the sentencing in August. You are listed in the statement of facts, Tell me how you will disprove this. Felicia."[1] No one else was copied on this correspondence. As recognized by Probation, "[g]iven the defendant's repeated contacts with co-conspirators and her apparent attempt to unlawfully influence CC-2, the Probation Officer has applied a two-level enhancement for Obstruction of Justice, pursuant to U.S.S.G. §3C1.1." Dkt. No. 22 (draft PSR ¶ 51).

- ***<u>Violates Condition (7)(d)</u>: no contact with any co-defendant or potential witness unless in the presence of counsel.***

7.  **Exhibit 4** is a Consent Order entered between the defendant and the Virginia Board of Medicine, which the defendant signed and swore before a notary public on May 13, 2020, in connection the surrender of her medical license in the Commonwealth of Virginia, and as required by the plea agreement entered in this case and the Court's Order Setting Release Conditions. In the first paragraph of the Consent Order, the defendant agreed that on May 4, 2020, she "knowingly and voluntarily signed a Statement of Facts, which she stipulated is true and accurate," and which the Virginia Board of Medicine attached to the Consent Order.

---

[1] The defendant is correct that CC-2 is referenced in the Statement of Facts, which she knowingly and voluntarily signed. *See* Dkt. No. 11 ¶¶ 8-9. According to a forensic extraction report of CC-2's cell phone, which is how this email was located by the FBI, the defendant attached a file titled "Statement of Facts.pdf" in her May 11, 2020 email to CC-2, although the file itself appears to be inaccessible on the extraction report. In addition, the government previously showed the defendant (in person and through discovery) multiple unredacted text messages from 2016 and 2018 in which the defendant and CC-2 explicitly discussed committing certain drug and fraud related-crimes relevant to this case. The defendant unquestionably knew that CC-2 was a co-conspirator, to include well before the May 4 plea hearing.

8. **Exhibit 5** contains the May 14, 2020 text messages between the defendant and Co-Conspirator 1 ("CC-1"), as referenced in Probation's Petition. In a April 17, 2020 meeting held at the U.S. Attorney's Office and attended by the defendant, two attorneys who previously represented the defendant, undersigned counsel, three federal law enforcement agents, and another Assistant U.S. Attorney (who joined by telephone), the government repeatedly identified CC-1 by name as a co-conspirator in this case. In addition to these messages, the FBI's investigation has revealed that the defendant and CC-1 exchanged at least approximately 275 text messages since the May 4 plea hearing. As noted in Probation's Petition, there were numerous text messages where CC-1 is assisting the defendant is obtaining letters of support for the defendant's sentencing, as well as assisting the defendant in selling medical equipment and providing advice about selling the defendant's medical practice. Additionally, phone records indicate that there have been approximately 100 combined calls and missed calls between the defendant and CC-1 since the plea hearing. Moreover, on June 2, 2020, the defendant called the INOVA Fairfax Hospital Emergency Department, indicated to hospital personnel that she was CC-1's physician, and attempted to speak with her.

- *<u>Violates Condition (7)(d)</u>: no contact with any co-defendant or potential witness unless in the presence of counsel; and <u>Condition (7)(s)</u>: cease all medical practice.*

9. **Exhibit 6** is a copy of a sonogram photograph that a now-former patient received in person from the defendant on May 16, 2020. During a recent witness interview, the patient informed the government and Probation that the defendant conducted an ultrasound on her on May 16 at the defendant's former medical practice. Prior to that date, the patient spoke with the defendant via telephone on May 14 to inform her of her pregnancy, at which time the defendant told the patient to come to her office two days later (on a Saturday) for an appointment. The

patient indicated that the defendant acted like her doctor during the May 16 visit, and the defendant never informed her of the guilty plea or that the defendant could no longer practice medicine.  The defendant told the patient that she had to pay for the visit with $150 cash, but could not provide a receipt because the office computer was purportedly down.  The government and Probation also spoke with the patient's significant other, who indicated that that the defendant acted like a doctor during the visit, and that he thought the lack of receipt from the defendant was strange.  During a July 21, 2020 consensually recorded phone call from the Alexandria Detention Center, the defendant admitted to her father that she performed a sonogram "on May 14th" and wondered aloud "why did they [the FBI] wait three months" to arrest her.

- ***<u>Violates Condition (7)(s)</u>: cease all medical practice; and <u>Condition (7)(v)</u>: no medical advice to anyone, even former patients.***

10. **Exhibit 7** contains part of the March 30, 2020 loan application that the defendant submitted to the U.S. Small Business Administration ("SBA") to alleviate alleged economic injury caused by the COVID-19 pandemic.

11. **Exhibit 8** is the Loan Authorization and Agreement for the above-described SBA loan in which the defendant certified on May 16, 2020 (12 days after the plea hearing), under penalty of perjury that there "has been no substantial adverse change in [the defendant's] financial condition (and organization, in case of a business borrower) since the date of the application for this Loan.  (Adverse changes include, but are not limited to: judgment liens, tax liens, mechanic's liens, bankruptcy, financial reverses, **arrest or conviction of felony**, etc.) (emphasis added).  *Id.* at 5-7.

- ***<u>Violates Condition (1)</u>: the defendant shall not commit any offense in violation of federal, state or local law while on release in this case; and <u>Condition (7)(s)</u>: cease all***

5

*medical practice.*

12. Separate and apart from the defendant's above-described false certification on May 16, the government has conducted a preliminary analysis of the defendant's currently known expenditures relating to a combined $87,960.00 in funds that she received pursuant to the above-described SBA loan and through the Cares Act Paycheck Protection Program. Prior to receiving these loans, the defendant's two known business bank accounts had balances of $90.01 and $73.95 on May 4, 2020 (the date of the plea hearing), while the defendant's two known personal bank accounts had balances of $39.62 and $1,975.87 on that same date. Of the $87,960.00 in pandemic-related loan funds received by the defendant, the government's preliminary analysis shows that approximately $49,084.36 was spent on business-related expenses, while approximately $21,244.75 was impermissibly spent on personal-related expenses. During the time period of May 5, 2020 through June 30, 2020, the defendant had $35,329.58 in available funds other than the above-described loan funds. During the same time period, the defendant paid a total of $56,574.33 in personal-related expenses, to include at least $28,980.00 in legal fees. The defendant's account balances on June 30, 2020 totaled $17,630.89. Consequently, it appears that the defendant fraudulently used at least approximately $21,244.75 in SBA loan and/or Cares Act Paycheck Protection Program loans to fund her personal-related expenses, including thousands of dollars in legal fees related to this case.[2]

---

[2] The government considers the above dollar amounts to be the most conservative calculations. For example, a total of $113.28 was paid to Amazon and a total of $607.10 was paid to Sprint from one of the defendants' business accounts during the noted time period. These transactions were considered to be business-related expenses, for now, although they could potentially be personal expenses. If the government receives further clarifying information regarding these and similar transactions, the calculations may change. Similarly, when a business-related transaction was identified in the defendant's personal accounts, the transaction was categorized as a business-related expense, for now. For example, several checks were written from one of the defendant's personal accounts referencing office cleaning. Although these transactions occurred

- ***Violates Condition (1): the defendant shall not commit any offense in violation of federal, state or local law while on release in this case.***

13. Finally, on July 19, 2020, just three days after the defendant was arrested for violating this Court's Order Setting Conditions of Release, the defendant called CC-2 using a consensually recorded phone line from the Alexandria Detention Center. During that conversation, the defendant discussed the underlying allegations surrounding her arrest, admitted that she performed a sonogram on a patient "on May 14" who paid her "$200," admitted that she "made it up" when informing officials that "she was exposed to somebody with COVID." The defendant committed a serious fraud on the Court which led to the rescheduling of this hearing from July 24 to August 7, a serious fraud on the Alexandria Detention Center and the dedicated officials there who had to take certain measures to keep the facility and other inmates safe in light of the defendant's false statement, and a serious fraud on the FBI. Regrettably, one of the FBI agents who was exposed to the defendant during the July 16, 2020 arrest was forced to quarantine in a hotel room for nearly two weeks away from his/her family because that agent has an immunocompromised child at home.

- ***Violates Condition (1): the defendant shall not commit any offense in violation of federal, state or local law while on release in this case; and Condition (7)(d): no***

---

in one of the defendant's personal accounts, they were considered business-related expenses, for now, in an abundance of caution. Further, the government found that the defendant's business accounts were not always used for business-related activity. For example, one of the business accounts appears to have been used primarily for personal-related activity, to include transactions at Einstein Bros Bagels, Harris Teeter, and Great Falls Animal Hospital, among others. The above dollar amounts do not reflect a dollar-for-dollar tracing of the use of the loan funds received by the defendant. The government believes that if and when such a tracing is conducted, the amount of loan money that was fraudulently used by the defendant to fund personal-related expenses will likely increase beyond the $21,244.75 amount set forth above.

*contact with any co-defendant or potential witness unless in the presence of counsel.*

## CONCLUSION

For the foregoing reasons, and any other reasons articulated during the upcoming August 7, 2020 bond revocation hearing, the government respectfully asks the Court to remand the defendant to the custody of the U.S. Marshals pending her sentencing and any other proceedings that are held in connection with this case.

Respectfully Submitted,

G. Zachary Terwilliger
United States Attorney

By: _____/s/_____
Raj Parekh
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: raj.parekh@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 5, 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record in this case.

                                                 /s/
                                         Raj Parekh
                                         Assistant United States Attorney
                                         United States Attorney's Office
                                         Eastern District of Virginia
                                         2100 Jamieson Avenue
                                         Alexandria, Virginia 22314
                                         Phone: (703) 299-3700
                                         Email: raj.parekh@usdoj.gov