IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA :

    v.     :     Case No. 1:20-cr-100

FELICIA DONALD :

    Defendant     :

**DEFENSE REPLY TO GOVERNMENT
POSITION ON SENTENCING**

FELICIA DONALD, through counsel, provides this Reply to the issues raised by the Government's Position on Sentencing.

**A.**     **Acceptance of Responsibility Applies**

Felicia Donald is entitled to the full three-level reduction to her Guideline calculation for acceptance of responsibility. The Parties agree that this is appropriate. Felicia accepted responsibility by cooperating extensively with the FBI on three occasions in September 2019 (turning over her electronics, patient files, and answering their questions without counsel), pleading guilty with an agreed statement of facts, pre-indictment, within five weeks of a target letter, and by showing remorse for her violations of the law.

The violation of her conditions of release were born of bad, impaired decision making and impulsiveness, not maliciousness. Felicia did not continue the conduct that brought her originally before this Court, i.e.,

distributing drugs. *Compare U.S. v. Derron Simon*, 1:14-cr-300 (E.D.V.A. 2015) (where Dr. Simon continued to deal drugs for profit after his guilty plea). Felicia's post plea conduct is not related to distributing drugs, and does not diminish how badly she feels about her crimes.

### B. Obstruction of Justice Does Not Apply

There is no obstruction of justice in Felicia's case and no reason to enhance her sentence or deny acceptance of responsibility based on that allegation. Felicia did not obstruct justice nor attempt to do so. The communication on May 11 with her sister Juliana was after Felicia's guilty plea. There was a plea agreement with agreed facts in open court and there has been no movement to withdraw from that agreement in this case. The statement of facts was not going to be disputed at sentencing. That context is essential, because there was nothing that Juliana could do to dispute the statement of facts at Felicia's sentencing. There could not be any undue influence by Felicia given the circumstances. Felicia's question to her sister, in context, was only a statement of concern about her publicly implicating her sister and wanting her sister to be able to defend herself.

The government has now added a new theory of how they claim the text is obstruction of justice. *See Gov't Position* at 8. This new theory is that Felicia was obstructing their investigation of Juliana by emailing her sister a public

document, Felicia's Statement of Facts from her May 4 plea, that had been publicly available for a week before the email. There was no possibility of obstruction by Felicia referring to a public document and expressing concern about the impact it could have on her sister.

### C. A Four Level Enhancement for Leadership is Not Appropriate

This is fundamentally a case about abusers and addicts, many who had real pain, coming to Felicia for prescriptions because she was a free hand with her prescription pad. This is not a street dealing case like *U.S. v. Simon, supra*, or *U.S. v. Edwards*, 1:18-cr-155 (E.D.V.A. 2018), where the prescribers organized prescription fillers as well as sellers for the drugs at a street level. Nor is this a case like *U.S. v. Bajwa*, 1:20-cr-60 (E.D.V.A. 2020), where there were direct undercover purchases of drugs going to the street.

When comparing this case to Dr. Simon's, there are marked differences. Dr. Simon directed his lieutenant, Romeo, and six others, to fill fraudulent prescriptions and return the pills to him, so he could distribute them to his dealers to sell. Dr. Simon would be paid $500 to $1,000 per fraudulent prescription. When he found out the price at which the pills were actually being sold on the street, he increased his share of the sales proceeds. Dr. Simon also created a false paper trail of fake medical records to make it look like he

was treating legitimate patients. He exercised extensive top down control over his hierarchical street dealing organization, something which is not present in this case. As noted previously, Dr. Simon continued the same criminal conduct post-plea. A sentence close to what Dr. Simon received would be unwarranted.

In *Edwards*, the defendant was involved for six years in fraudulently issuing prescriptions and using co-conspirators to fill them. Those co-conspirators then returned the full bottles to Edwards, who then distributed them to her dealers to sell. Edwards paid the co-conspirators who filled the prescriptions and charge approximately $800 for each blank prescription. Her base offense level was 32. Edwards received a four-level leadership enhancement and was running both sides of her conspiracy. A ten year sentence, like that which was given for Edwards and especially considering the more egregious facts of that case, would not be appropriate here.

Dr. Bajwa, in a period of twenty-two months, issued approximately 16,000 prescriptions to more than a thousand patients, averaging more than seven hundred prescriptions per month. His patients received more than 900,000 illegal doses of drugs over just those 22 months. Dr. Bajwa continued to prescribe to a patient who had track marks, despite the patient's mother's asking Dr. Bajwa to stop prescribing. He even helped her child get illegal drugs while in treatment. When they overdosed, Dr. Bajwa essentially expressed the

view that he had no responsibility for what happened if his patients overdosed. Undercover officers also purchased drugs from his patients. Dr. Bajwa was not charged with conspiracy (despite having staff who assisted him in his illegal practice) and did not receive a leadership role enhancement.

These cases illustrate why the four-level enhancement for leadership does not apply in this case. That is aside from what would be an unwarranted sentencing disparity between these cases and the sentence urged by the Government for Felicia Donald.

### D. The Enhancement for 2D1.1.(b)(16)(B) Does Not Apply

The Government claims that this enhancement applies because addicts received prescriptions, and Susan Alcantara, who at one point was pregnant, received oxycodone prescriptions.

Distribution to addicts does not establish that this enhancement applies. It is not a *per se* enhancement applicable in cases just because an abuser and/or addict receives drugs. If the Commission or Congress intended for this provision to add two levels for all such distributions they would have written it into this provision. They did not. Instead, this provision applies only to those who are "unusually" vulnerable or are "particularly" susceptible, beyond the fact that they are abusers or addicts. The government's interpretation would mean that any distribution to anyone who is a drug abuser or addict

- 5 -

automatically qualifies for the two level enhancement, which is simply not the intent of this enhancement. It was not applied in *Edwards, Bajwa, Simon* (*all supra*), or *United States v. Hurwitz*, 1:03-cr-00467-LMB (2006), 459 F.3d 463 (4th Cir. 2006)) even though those cases involved addicts and overdoses.

The government's reliance on Alcantara's pregnancy is misplaced. Alcantara, when working in Felicia Donald's OBGYN practice, had a difficult pregnancy, which, in early 2018, resulted in her being let go from the practice. She needed to stay home on bed rest. After the healthy delivery of her child, she returned to Felicia's practice in September or October 2018. Her statement of facts referenced by the prosecution shows she abused prescriptions but says nothing about her abusing drugs while pregnant. Furthermore, the Government does not contradict Dr. Gershon's expert opinion. Dr. Gershon, after years of pain practice and also consulting several OB/GYN doctors, explained that prescribing pain medication for women who are pregnant is not *per se* out of the bounds of acceptable medical practice. It depends on their individual circumstances at the time.

### E. Dr. Hyde's and Dr. Fiester's Reports are Reliable

Dr. Hyde's extensive and well-founded report is based on the MRI, which this Court authorized, as well as interviews with those who are familiar with Felicia Donald and noticed changes in her over the past three or so years.

Those close to her, including physicians, knew how she was before and after the changes. A thorough report must take into consideration interviews with those who know the patient well, in addition to the physical evidence, such as the brain lesions found here. Dr. Hyde's report does exactly that.

Dr. Fiester's report is likewise well reasoned and details the basis of its conclusions, following well recognized practices in the field. Dr. Fiester relied on the report from Dr. Hyde, the neurologist, as well as interviews with the patient and interviews and letters from those who are close to and know well the person being diagnosed. The report details the changes that those who know her have observed over the past years. This standard approach lends support to the conclusions. A valid psychiatric report could not ignore what those close to her observed in Felicia over the past years. This approach, in combination with the MRI and Dr. Hyde's diagnosis, results in an accurate psychological picture.

The prosecution, in its Position, cites *U.S. v. Flaherty*, 2007 U.S. Dist. LEXIS 19767 (Nev. D.C. March 20, 2007) (unpublished opinion), regarding Dr. Fiester, in which a district court in Nevada did not take to well to a defendant using "two doctors from the East", ten years ago, in a motion to reopen a case on newly discovered evidence. *Id*. at \*17. That court listed a string of isolated

cases (from more than 700 matters), out of context, to try to show a defense bias. Reviewing the cited cases shows no pattern of bias.

In *U.S. v. Rouse,* 168 F.3d 1371 (D.C. Cir. 1999), the defendant filed a motion for a new trial based on battered woman syndrome. The court found the evidence was not newly discovered. *Id.* at 1374-75. Dr. Fiester was asked by the trial court during a hearing on the motion whether avoiding punishment was a motive for the defendant's false statements, and Dr. Fiester replied that her expertise was not in establishing whether someone was "telling the truth". *Id.* The district court, for reasons having nothing to do with Dr. Fiester, was not convinced of the defendant's truthfulness. *Id.*

In *Bryant v. State*, 393 Md. 196 (2005), a premeditated murder case, during trial, Dr. Fiester was *voir dired* outside of the presence of the jury regarding the defendant's impulse control disorder. When questioned by the judge on whether someone with that disorder could plan a future action, Dr. Fiester testified that someone with the diagnosis "could plan a crime". She was correct in her testimony even though it did not help the defense on the issue of premeditation.

In *Orndorff v. Comm.*, 271 Va. 486 (2006), Dr. Fiester testified in a post-conviction proceeding regarding dissociative identity disorder. Initially, Dr. Fiester indicated the defendant had a severe mental disorder making the

defendant incompetent for sentencing. The court agreed, and the defendant was sent to Western State Mental Hospital. Dr. Fiester was corroborated by Dr. Loewenstien. However, when the case came back to court it ultimately turned on whether her diagnosis of dissociative identity disorder was newly discovered evidence. The trial court ruled it was not newly discovered, and the Supreme Court of Virginia agreed. The Supreme Court of Virginia still noted the doctors performed a "thorough analysis". 271 Va. at 503.

In *Attorney Grievance Comm'n v. Childress*, 364 Md. 48 (2001), the Commission used Dr. Fiester's prior testimony from a trial in Virginia, in a disbarment proceeding in Maryland based on the lawyer's Virginia conviction. In the disbarment proceeding, Dr. Fiester testified that the attorney respondent did not fit the definition of a pedophile in the DSM-IV, diagnosed other disorders, and made recommendations about future treatment. *Id.* at 66. The Court looked at all the circumstances, including Dr. Feister's testimony at the disbarment proceeding and determined that Childress should be suspended indefinitely but gave him leave to reapply to the bar after a year. This was no rejection of Dr. Fiester or her testimony.

Regarding *In Re Wodard*, 636 A.2d 969 (D.C. Ct. App. 1994), it involved an addicted lawyer seeking to remand a bar proceeding for new evidence based on a report from Dr. Fiester. The Board found that Dr. Fiester's opinion was

not different from the Bar's own psychiatrist regarding the attorney's disorders. Dr. Fiester was candid in her report that the respondent was making progress, but could not state there was an insignificant risk of future harm at that time. *Id.* at 978. Dr. Fiester did not overreach, and her agreement with bar counsel is a sign.

In *U.S. v. Rubashkin*, 718 F. Supp. 2d 953 (N.D. Iowa 2010), Dr. Fiester was a mitigating witness in a fraud case. Unlike this case, she only interviewed the defendant and his wife and had no other corroborating evidence. The court did not find that the defendant's depression justified a variance. *Id.* at 986.

These cases, once considered, do not show that Dr. Fiester's medical opinion is biased or invalid. Dr. Fiester's well supported report should be considered and given weight.

### F. Conclusion

This case is not a sophisticated operation with well crafted, fake medical records by a doctor who has one crew filling prescriptions that are returned so the pills can then be sold on the street by another of the doctor's crews. It is a sad case where addicts and abusers were to freely given access to drugs that should not have been so easily made available to them. Felicia Donald is not

a diabolical mastermind.  She is older, ill, and has mental issues, both physical and psychiatric.

                                                      FELICIA DONALD
                                                      By Counsel

_____/S/_____
BRET D. LEE, ESQ.
VSB No. 82337
15021 Judicial Drive Suite 100
Fairfax, VA 22030
703 936 0580
bret@bretlee.com


_____/S/_____
MARVIN D. MILLER, ESQ.
VSB No. 1101
Law Office of Marvin D. Miller
1203 Duke Street
Alexandria, Virginia 22314
703 548-5000
Fax 703 739-0179
ofc@mdmillerlaw.com


## **CERTIFICATE OF SERVICE**

     I hereby certify that on the 30th day of November 2020, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to Raj Parekh, Assistant United States Attorney, United States Attorney's Office, Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314-5794.

                                               _____/S/_____
                                               MARVIN D. MILLER