## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

**UNITED STATES OF AMERICA :**

|  |  |  |
|---|---|---|
| **v.** | : | **Case No. 1:20-cr-100** |
| **FELICIA DONALD** | : | |
| **Defendant** | : | **Under Seal** |

## DEFENSE SENTENCING MEMORANDUM
## REDACTED

FELICIA DONALD, through counsel, provides this Memorandum to this Court to aid it in deciding the appropriate sentence in this case. She also adopts and incorporates herein, by reference, her Position on the Presentence Report. This is not a case which requires a harsh prison sentence in order to achieve the goals of sentencing. Felicia has no prior convictions or involvement with the criminal justice system. This was not a planned, calculated plot to distribute drugs on the street. It was an ill-conceived and poorly executed effort at a pain practice by someone with significant psychiatric impairments. Felicia knows what she did was wrong and unlawful. She has taken responsibility for her wrongdoing with the Court and to those close to her. This was very difficult for her as it ended her career of more than 30 years as a well respected practitioner.

1

Felicia took responsibility early in these proceedings. Felicia met with the FBI three different times without an attorney or an attorney's advice. She gave them everything they asked for. She turned over patient files, her cell phone, and answered all the questions they asked. She is now facing a twenty-four (24) to thirty (30) year sentence, according to the PSR. At 24 years, if she survived, she would be 89 years old. With her health, she would almost certainly not survive half of that time in prison.

Felicia is very concerned about the impact of what she did and her guilt on the people most close to her; especially her Father, Carr and her Brother, Scott. Her family has depended on her so much, and her wrongdoing has hurt them a lot. In her life she has been a positive and trusting person who always contributed time, energy, and effort to helping others. The letters on her behalf show that. She is a person who trusts, cares for, cares about, and helps others. That has been a hallmark of her life. None condone her wrongdoing, but all know her as the trusting, generous, caring, and giving person she is and has been throughout her life.

## I.     BACKGROUND

Felicia is to be sentenced on her pre-indictment guilty plea. She has admitted what she did, that it was wrong, and accepts that it is she who bears responsibility for it. She knows she will receive a prison sentence but hope it

will not result in her dying in jail.  She is appreciative that those really close to her have not abandoned her and feels very badly that she has let those people who respected her down.

### A.    Her History

Felicia enjoys a network of positive people willing and able to help her after her sentence is served.  Her family and friends are solid, stable, and will provide a support base for her in old age after she serves her sentence.  Not everyone enjoys such support.

The letters written on her behalf are provided with this Memorandum. They recognize that she is one who easily trust and always goes out of her way to help others.  It is hoped that this Court will give their support and consideration to the person they describe over decades – though not the same in recent years - when making its decision.

There are thirty-four (34) people who have come forward to show their support for Felicia.  They are physicians, patients, friends, colleagues, and family.  A common thread through them all is that she is a person who feels obligated to always help others.  She trusts people – often too easily – and has always gone out of her way to help someone else.  She would provide financial aid to those in need even when she was drowning in her own debt.  She would

take a vacation and use the time to be on 24-hour call so another doctor in a rural part of the state could take some time off.

Many were helped along their way by her actions, her encouragement, and by her example.  The woman they have known over the decades would not be in this situation, standing in the well of this Court, a disgraced, defrocked physician, to be sentenced in a drug case.  Something happened along the way. Starting only a few years back, Felicia began to change.  She seemed to be more rash and more impulsive.  She was not practicing medicine on the level at which she had for so long.  She lost privileges in hospitals, was admonished by the Medical Board for her failure to maintain the records and control of her practice as required, and yet she still could not conform.  It is not as though she was raking in money.  The proceeds realized through the course of the charged conspiracy was only $23,800.00.  Felicia is in colossal debt now.  In the last few years, Felicia bought very expensive medical equipment which she did not need for her OB/GYN practice, and made no effort to turn into a part of her practice.  One machine, a Mona Lisa device, was repossessed and she owes approximately $135,000.00 for it.  She made disastrous plans to sell her OB/GYN medical practice, had no legal or business advisers, and ultimately just walked away from the botched sale, resulting in lawsuits and more debt.

4

This case is not the only tragedy of which she is part because of her own actions and inactions.  It is as though somewhere along the road, not all that long ago, she became someone else - someone different than many of those who wrote about her knew.  Some of her friends and family saw changes.  No one really had a diagnosis of why.  With the help of Dr. Hyde and Dr. Fiester, there is now understanding of what contributed to this turnabout.

**B.    Medical and Psychological Status**

Personal health information Under Seal.

## II.    SENTENCING GUIDELINES

### A.    The Sentencing Guidelines are not Mandatory

The law recognizes that there are individuals as to whom a sentence of extensive incarceration is not appropriate.   Not every case requires the harshness of extremely long confinement as the presentence report recommends here.   Being locked up in prison is a very difficult reality for anyone; for Felicia, at her age and in her medical and mental circumstance, it is even more difficult.   Her medical and psychiatric needs are not small.   Even

8

the Sentencing Commission, with all of its drawbacks, particularly in drug cases, where the Guidelines are not empirically based like they are for other offenses, recognized that there are situations where trial courts should and need to be able to give non-Guideline sentences.  For that reason, since *United States v. Becker*, 542 U.S. 220 (2005), courts are vested with the authority to sentence below the Guidelines range by the exercise of the discretion granted by 18 U.S.C. §3553(a).  Such a sentence is appropriate in this case.  Felicia does not require the very extreme harshness of the guideline recommended sentence in the presentence report, because a much lower sentence will achieve the goals set forth in 18 U.S.C. §3553(a).  Felicia is not in fine physical condition nor is she fully possessed of all of her faculties.  There is both physical brain damage and psychiatric conditions causing problems over the past few years which contributed to her present situation.  While Felicia did wrong and is guilty, there are quite significant mitigators.

### B.    The Drug Guidelines Are Not Empirical

The Drug Guidelines, when originally formulated, were not, like other Guidelines, based on empirical data, research studies, or the specialized expertise of the Commission.  When the Commissioners could not agree on a single sentencing philosophy, they ultimately decided that the controlling force behind drug sentences was to be drug type and quantity.  Recidivism was

neither analyzed nor included as a factor when the drug guidelines were written. *See United States v. Diaz,* 11-cr-821-2 (J.G.) E.D.N.Y. (2013) which explicates how the drug guidelines are an aberration compared to other guidelines. Compare, for example, the Virginia Sentencing Guidelines which, in contrast, are actually based on empirical studies of sentences across the state and the defendants' characteristics relating to the likelihood of recidivism.

The actual foundation for this non-empirical Guideline calculation in the Federal Sentencing Guidelines was the sudden and tragic death of University of Maryland basketball star Len Bias, caused by a drug overdose. *Id.* at 10, 13, 14. His death led to the drug type and quantity as the basis for calculating a sentence, rather than the more effective and practical approach based on an historical and empirical analysis which was used to develop the other guidelines. The result of the approach which was used for drugs has been a massive, exponential increase in our prison population with little societal change in drug use. Guideline calculations in drug cases come from the perspective of a war on drugs. That was not, it turned out, an effective way to address the issues. While the "War on Drugs" and its infatuation with long sentences has proved a failure, it still drives the Guidelines and the enhancements.

### C.   Felicia Donald, the Individual before the Court

Before the Guidelines and sentencing which was driven by controls designed to eliminate judicial discretion and sentencing based on the individual, the approach to sentencing was based on who was before the Court and what could be done to impose a reasonable punishment for that person without crushing them.  A cookie-cutter math grid ignores the individual.  A sentence for Felicia Donald, under the totality of the circumstances, need not be the extremely harsh Guideline range in the Pre-Sentence Report to be valid, practical, and proper.  The PSR Guideline sentence would be way beyond what is necessary or reasonable and she would not survive it.

The history of the accused, such as her well known predisposition to always trust and help someone else when coupled with her psychiatric issues and brain lesions, are not something considered or taken into account by the Drug Guidelines.  Sentencing factors consistent with 18 U.S.C. §3553(a) are a more appropriate basis for analysis than the grid in a case like this.

While the defense recognizes that Felicia will be sentenced to prison, the request is for a term well below the Guidelines range – one that she can survive.  The purpose of criminal law is to benefit society by providing protection through arrest, prosecution, and conviction as well as by rehabilitating and avoiding recidivism for those who are sentenced.  There is a

11

sensible reason Congress has clearly said that sentences should be the minimal necessary to achieve rehabilitation and punishment. Lengthy sentences to prison are not the default answer. The fundamental consideration in 18 U.S.C. §3553(a) that should be applied here is to look at holistically at the crime and the person and what can be done to achieve the purpose of sentencing. Simply sentencing on a grid does not generate respect for the law and our system.

This is not a case for a long sentence given Felicia's age, mental conditions and issues, and medical problems. A long sentence for her is not consistent with what has been recognized as practical and genuinely effective by many states and even the fractured U.S. Congress. There has been bipartisan support to change the draconian drug sentencing laws. Time and experience has proved they do not work. Our drug laws cause us to have the largest prison population and the longest, most extreme, prison sentences of any developed country in the world but to no beneficial result. Where draconian drug laws have been changed, the proven result has been less recidivism and lower crime rates. New York and Texas proved that. They greatly reduced their draconian drug sentences and lowered their rates of recidivism and their prison population. This Court is asked for a sentence that would allow Felicia to have a chance to address her problems, but not to be destroyed by the system. Even half of the recommended Guideline in the

presentence report sentence in this case is unnecessarily severe; it is way more than the §3553(a) would call for.

### D.   Sentences - Pre *Booker*

Prior to *United States v. Booker*, 542 U.S. 220 (2005), the Guideline sentence proposed by the PSR would not be appropriate.   Some years before *Booker*, the Supreme Court acknowledged the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances.  *See Koons v. United States*, 518 U.S. 81, 92 (1996), which recognized that people should be considered as individuals. The Court recognized that the defendant in that case would face an unusually difficult time in prison because of who he was and that was taken into account in fashioning an appropriate sentence. That consideration should be factored in here as well.  We are not presented, in this case, with someone who is the typical defendant charged in a case of this category.

### E.   Principles Applicable to Sentencing

The traditional arguments which are often urged to justify extreme periods of confinement are not appropriate in this particular case.   Those reasons generally urged for such sentences are punishment, protection of society, individual deterrence, general deterrence, and rehabilitation, and are mirrored in 18 U.S.C. §3553(a).  In 18 U.S.C.  §3553(a), Congress has said that

13

courts should look to impose the minimal sentence, one that is not greater than necessary to achieve the goals of sentencing.

Punishment in terms of vengeance does not serve a utilitarian purpose and is, in fact, counterproductive to a free and democratic society. We are a society whose legal system is not supposed to be ruled by the emotion of revenge and should continue to resist those who would push us to become one. Punishment can come in many forms and need not always be an extreme sentence of incarceration. *See*, *e.g.*, *United States v. Nesbeth*, 15-cr-18 (FB), (E.D.N.Y. (2016)), which addresses the long-term adverse consequences of a felony conviction. Felicia will be incarcerated, and the post incarceration brand of being a felon with all of the adverse consequences it imposes for the remainder of her life is also a heavy punishment. The loss of her medical license, and no longer being able to practice medicine or be a doctor, which is an effect of this case, is also a serious blow to her and is a severe punishment in of itself.

Society does not need to be protected from Felicia. Felicia's activities were focused on a small group of people, not a widespread network of distribution. All are glad that there were no overdoses in this case, and that the users in this case are now getting the help they need to recover from addictions. That does not excuse the wrongdoing, but does give it context.

14

There is no danger of recidivism from Felicia. She came forward, accepted responsibility for the case, pled guilty, and is now to be sentenced. She will not be a threat to others in the future. Upon release, she will be of an age where the likelihood of recidivism is nearly non-existent.

The concept of individual deterrence holds that an individual punished for a crime will not likely repeat it. This is not a case where there is a likelihood of recidivism. Felicia is sixty-five years old. Felicia does not need to be deterred from crime in the future by a guideline sentence in this case. Felicia has a strong supportive network which few have available. Her likelihood for success after release is greater than most. That is an important factor that ought to keep her from coming before the courts again. She will not be a doctor, will not be able to prescribe medicine, and will not be in a position to commit this kind of crime ever again due to the loss of her medical license.

The theory of general deterrence holds that severe punishment of one individual will deter others. This theory has been loudly espoused but there is no proof that it actually works. It has almost no factual support. In fact, in the England of several centuries past, pickpockets were hung in public squares, yet at these public executions other pickpockets worked the attending crowds *en masse*. Historically, the only general deterrence ever actually shown to have proven reliability is the guarantee of being caught. The guarantee of being

15

caught is something that really does stop crime.  It is the only clearly proved preventative.  It is, after all, what people know.  People do not speed when they know there is a speed trap, or drink and drive when holiday roadside checks are in place.  It is the sureness of being caught, rather than the severity of the punishment, that is the only effective deterrent to have been proved.  It is the only deterrent with known, provable success.

The consequences that have already been served out to Felicia would be more than enough of a deterrent for any doctor considering whether they would conduct any kind of illegal "pill mill".  Felicia's career of more than thirty years has ended in disaster.  She is disgraced.  She has lost her license, and with it, her profession and calling.  Felicia will be a felon, has suffered financial ruin as a result of her actions, and will now serve a prison sentence.  Jail in Alexandria has already been very hard on her.  No doctor seeing her circumstances, even as they are right now, would envy her position, and no doctor would view the consequences she will suffer as less than serious warning.  A sentence focused on rehabilitation for Felicia, showing mercy, would not be misconstrued as a message that her crime is acceptable.

In recent years, the states of Texas, New York, and Kentucky have reduced their legal system's former reliance on severe incarceration as the key to addressing crime, particularly drug crime.  By using alternative sentences

and lesser terms of incarceration when there is no felony record, no violence, and little likelihood of a repeat offense, they have lowered their crime rate. They have also shown that a sentencing system less harsh than what the Guidelines recommends also reduces the repeat offender rate, and their prison population. Other states such as South Carolina are following suit. The United States has the largest prison population in the world. We have 25% of the whole world's prisoners but only 5% of the world's population. Incarceration, even on our massive scale, has not solved our problems, particularly with drugs. The long mandatory minimum in cases such as this would be sufficiently effective. As recognized in *United States v. Diaz, supra*, our drug sentencing history for over twenty (20) plus years has been driven by political factors, not by the needs of society nor by what justice requires in a rational system of laws.

Finally, we come to rehabilitation. This is the opposite of punishment for it shows a concern for the individual defendant and for society. Rehabilitation represents efforts to help the defendant and to also help society so that he does not return to the conduct which led him afoul of the law. Felicia Donald knows she must be sent to prison but does not need to be released from her first felony conviction in a decade or more in order to stay away from this sort of conduct in the future. Her support network, acceptance of responsibility

17

and initiative to change her life are strong signs that she can be successfully rehabilitated without the need of extremely long confinement.

This Court is respectfully asked to impose a sentence in her case that will allow her to have a chance at life when released.

FELICIA DONALD
By Counsel

_____/S/_____
BRET D. LEE, ESQ.
VSB No. 82337
15021 Judicial Drive Suite 105
Fairfax, VA 22030
703 936 0580
bret@bretlee.com

_____/S/_____
MARVIN D. MILLER, ESQ.
VSB No. 1101
Law Office of Marvin D. Miller
1203 Duke Street
Alexandria, Virginia 22314
703 548-5000
Fax 703 739-0179
ofc@mdmillerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of November 2020, a true copy hereof was provided to Raj Parekh, Assistant United States Attorney, United States Attorney's Office, Eastern District of Virginia, 2100 Jamieson Avenue, Alexandria, VA 22314-5794.

_____/S/_____
MARVIN D. MILLER